1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALBERTO LOPEZ,

        Plaintiff,

    v.

BELLINGHAM MARINE INDUSTRIES, INC.,

        Defendant.

No. 25-cv-00518-DAD-JDP

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO REMAND

(Doc. Nos. 12; 17)

This matter is before the court on defendant's motion to dismiss or stay the pending action and plaintiff's motion to remand this action to the Solano County Superior Court. (Doc. Nos. 12, 17.) The pending motions were taken under submission on the papers on March 24, 2025 and April 21, 2025 respectively. (Doc. Nos. 20, 27.) For the reasons explained below, the court will deny both motions.

## BACKGROUND

### A.     The Present Action

On January 10, 2025, plaintiff, Alberto Lopez, on behalf of himself and all other similarly situated individuals, filed a complaint initiating this putative class action in the Solano County Superior Court against defendants Bellingham Marine Industries Inc., and unnamed Doe defendants 1–100. (Doc. No. 1-4 at 9.) In his complaint, plaintiff alleges as follows.

1

1    Plaintiff was employed by defendant as an hourly-paid employee.[1]  (*Id.* at ¶ 17.)

2    "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-

3    exempt employees within the State of California."  (*Id.* at ¶ 24.)  During his employment,

4    defendant paid wages and benefits to plaintiff.  (*Id.* at ¶ 21.)  Also during that employment,

5    plaintiff worked over eight hours per day and over forty hours per week.  (*Id.* at ¶ 23.)  Despite

6    this, defendant failed to pay plaintiff for all hours worked or to compensate plaintiff for overtime.

7    (*Id.* at ¶ 25.)  Defendant also failed to provide plaintiff all required meal and rest break periods or

8    failed to properly compensate him for one additional hour of pay when any such a break was

9    missed, late, or interrupted.  (*Id.* at ¶ 24, 28.)  Furthermore, plaintiff received deficient wage

10    statements from defendant.  (*Id.* at ¶ 31.)  Plaintiff alleges on information and belief that

11    defendant treated other members of the putative class in a similar manner.  (*Id.* at ¶¶ 17–41.)

12    Based on these and other allegations, plaintiff asserts the following nine causes of action:

13    (1) failure to pay overtime wages in violation of California Labor Code §§ 510, 1198; (2) failure

14    to pay meal period premium wages in violation of California Labor Code §§ 226.7, 512(a); (3)

15    failure to pay rest period premium wages in violation of California Labor Code § 226.7; (4)

16    failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197; (5) failure to

17    timely pay final wages in violation of California Labor Code §§ 201, 202; (6) failure to furnish

18    accurate wage statements in violation of California Labor Code § 226(a); (7) failure to reimburse

19    business expenses in violation of California Labor Code §§ 2800, 2802; (8) a representative

20    action claim for civil penalties brought pursuant to the Private Attorneys General Act of 2004

21    ("PAGA"), California Labor Code §§ 2698, *et seq.*; (9) violation of California's Unfair

22    Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*  (*Id.* at

23    ¶¶ 42–117.)

24    /////

25    /////

26

27    _____

[1]  Though plaintiff does not specify the dates of his employment in his complaint, it appears from
28    a letter attached to the complaint as exhibit 1 that plaintiff alleges he was employed by defendant
until approximately June of 2024.  (Doc. No. 1-4 at 41.)

1    On February 13, 2025, defendant removed this action to this federal court pursuant to 28

2    U.S.C. §§ 1332(a)(1), 1332(d)(2), 1441, and 1446 on the grounds that this court has jurisdiction

3    pursuant to the Class Action Fairness Act ("CAFA") because there is minimal diversity, the

4    putative class exceeds 100 members, and the amount in controversy exceeds $5 million.  (Doc.

5    No. 1 at 9–27).  Defendant alternatively asserts that this court has diversity jurisdiction over the

6    instant action because there is complete diversity of citizenship between plaintiff and defendant

7    and the amount in controversy as to plaintiff exceeds $75,000.  (*Id.* at 27–31.)

8    **B.    The *Fuentes* Actions**

9    On November 30, 2023, a separate plaintiff, Jesus Fuentes, filed a class action in the

10   Orange County Superior Court (the "*Fuentes* CAFA Action") against the same defendant named

11   in this case.  (Doc. No. 5-1 at 2.)  Plaintiff Fuentes alleged in that action as follows.  Defendant

12   "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt

13   employees within the State of California."  (*Id.* at ¶ 24.)  "This scheme involved, *inter alia*,

14   failing to pay them for all hours worked, and failing to provide legally mandated meal and rest

15   breaks or pay related premium wages in lieu thereof, in violation of California law."  (*Id.*)

16   Defendant also failed to provide him with overtime and minimum wages.  (*Id.* at ¶¶ 48, 75.)

17   Defendant also withheld proper meal or rest breaks and failed to properly compensate him

18   payment of one additional hour of work for these missed breaks.  (*Id.* at ¶¶ 27, 28.)  He also

19   received deficient wage statement from defendant during his employment.  (*Id.* at ¶ 31.)  That

20   plaintiff alleges on information and belief that defendant behaved similarly toward other members

21   of the putative class.  (*Id.* at ¶¶ 17–41.)  Defendant subsequently removed the *Fuentes* CAFA

22   Class Action to the U.S. District Court for the Central District of California on January 5, 2024.

23   (*Fuentes*, Doc. No. 1.)  Plaintiff Fuentes filed a motion to remand that action back to the Orange

24   County Superior Court on February 2, 2024.  (*Id.* at 19.)  On June 10, 2024, the district court

25   denied plaintiff Fuentes' motion to remand.  (*Id.* at 34.)

26   On March 28, 2024, the *Fuentes* CAFA Action plaintiff filed a separate PAGA action in

27   the Orange County Superior Court on behalf of himself and other current and former employees

28   of defendant (the "*Fuentes* PAGA Action").  (Doc. No. 5-3 at 2.)  His allegations rest upon the

1   same contentions raised in the *Fuentes* CAFA Action complaint. (*Id.* at ¶¶ 14–27, 30, 31.)

2   However, in the *Fuentes* PAGA Action it is also alleged that defendant violated whistleblower

3   protections. (*Id.* at ¶¶ 28, 29.) In that action plaintiff Fuentes seeks penalties, interests, attorneys'

4   fees, and costs pursuant, but not limited to: (1) penalties under California Labor Code § 2699; (2)

5   penalties under California Code of Regulations Title 8 § 11040; (3) penalties under California

6   Labor Code § 210; (4) penalties under § 1197.1; (5) attorneys' fees and costs pursuant to

7   California Labor Code §§ 218.5, 1102.5(b), 1102.5(d), 1194, and 2699. (*Id.* at 32.)

8          On February 26, 2025, defendant filed the pending motion to dismiss or stay this action.

9   (Doc. No. 12.) On March 20, 2025, plaintiff filed his opposition to defendant's motion to

10  dismiss. (Doc. No. 18.) On March 26, 2025, defendant filed its reply thereto. (Doc. No. 22.)

11         Plaintiff filed the pending motion to remand this action to the Solano County Superior

12  Court on March 17, 2025. (Doc. No. 17.) Defendant filed its opposition on March 31, 2025.

13  (Doc. No. 23.) Plaintiff filed his reply thereto on April 10, 2025. (Doc. No. 25.) Below, the

14  court will review the applicable legal standards and address each motion in turn.

15                                      **LEGAL STANDARDS**

16  **A.     Diversity Jurisdiction Under CAFA**

17         Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only

18  where authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511

19  U.S. 375, 377 (1994). Unless otherwise limited, "any civil action brought in a State court of

20  which the district courts of the United States have original jurisdiction, may be removed by the

21  defendant or the defendants, to the district court of the United States for the district and division

22  embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Through CAFA,

23  Congress broadened federal diversity jurisdiction over class actions . . . ." *Mondragon v. Cap.*

24  *One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

25         Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28

26  U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse,

27  and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v.*

28  *Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592

1  (2013)).  "Congress designed the terms of CAFA specifically to permit a defendant to remove

2  certain class or mass actions into federal court."  *Ibarra v. Manheim Invs. Inc*., 775 F.3d 1193,

3  1197 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA."  *Dart*

4  *Cherokee*, 574 U.S. at 89.  However, "[t]he rule that a removed case in which the plaintiff lacks

5  Article III standing must be remanded to state court under § 1447(c) applies as well to a case

6  removed pursuant to CAFA as to any other type of removed case."  *Polo v. Innoventions Int'l,*

7  *LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

8  **B.    First to File Rule**

9          The first-to-file rule is "a generally recognized doctrine of federal comity which permits a

10  district court to decline jurisdiction over an action when a complaint involving the same parties

11  and issues has already been filed in another district."  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150,

12  1161 (9th Cir. 2011) (internal quotation marks and citation omitted).  "This rule promotes judicial

13  efficiency and prevents the risk of inconsistent decisions that would arise from multiple litigations

14  of identical claims."  *Ruckus Wireless, Inc. v. Harris Corp.*, No. 11-cv-01944-LHK, 2012 WL

15  588792, at *2 (N.D. Cal. Feb. 22, 2012).  "This rule, however, is not a rigid or inflexible rule to

16  be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial

17  administration."  *Apple Inc.*, 658 F.3d at 1161 (internal quotation marks and citation omitted).

18  Indeed, "[t]he most basic aspect of the first-to-file rule is that it is discretionary."  *Sousa v.*

19  *Walmart, Inc.*, No. 1:20-cv-00500-EPG, 2023 WL 5278662, at *5 (E.D. Cal. Aug. 16, 2023)

20  (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).  If the first-to-

21  file rule applies, then the district court has discretion to stay or dismiss the case.  *In re Bozic*, 888

22  F.3d 1048, 1051–52 (9th Cir. 2018) (internal quotation marks and citations omitted).

23  **C.    *Colorado River***

24          "Abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colo.*

25  *River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  "Generally, as

26  between state and federal courts, the rule is that the pendency of an action in the state court is no

27  bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Id.* at

28  817 (internal quotation marks and citations omitted).  However, in exceptional circumstances, the

1    district court may dismiss or stay an action when a concurrent state court proceeding involving

2    the same matter is pending.  *Alila-Katita v. U.S. Bank Nat'l Assoc.*, No. 16-cv-03950-JSW, 2017

3    WL 8948735, at *1 (N.D. Cal. May 2, 2017) (citation omitted).

4                                    **DISCUSSION**

5    **A.     Plaintiff's Motion to Remand**

6            Defendant removed this putative class action pursuant to CAFA, alleging that the amount

7    in controversy is $14,803,168.79.  (Doc. No. 1 at 13, 14.)  In his pending motion to remand,

8    plaintiff argues that defendant has failed to meet its burden of establishing that the amount in

9    controversy here exceeds $5 million.  (Doc. No. 17 at 9.)

10           1.     Requests for Judicial Notice

11           The parties request that the court take judicial notice of documents submitted in support of

12   their briefs on the pending motion to remand.  (Doc. Nos. 24, 26-1.)  Plaintiff requests that the

13   court take judicial notice of the declaration submitted by the *Fuentes* plaintiff in support of his

14   brief filed in the Central District of California in his case pending against defendant.  (Doc. No.

15   26-1.)  Defendant requests that the court take judicial notice of the complaint filed by the *Fuentes*

16   plaintiff in the same case pending before the Central District.  (Doc. No. 24.)

17           Courts may "judicially notice a fact that is not subject to reasonable dispute because it:

18   (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

19   readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R.

20   Evid. 201(b).  This includes "proceedings in other courts, both within and without the federal

21   judicial system, if those proceedings have a direct relation to matters at issue."  *United States v.

22   Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (internal quotation marks and citations omitted).

23   However, "[w]here a party requests notice of filings made in other courts, notice may only be

24   taken for the limited purpose of recognizing the judicial act that the order or filing represents, not

25   for the truth of the matters asserted in those filings."  *Banuelos v. Dominos Pizza LLC*, No. 24-cv-

26   07085-BLF, 2025 WL 786350, at *2 (N.D. Cal. Mar. 12, 2025) (internal quotation marks and

27   citation omitted).  Accordingly, the court will grant both parties' requests for judicial notice as to

28   the existence of the court filings in the pending *Fuentes* action.

2.    Amount in Controversy

The parties do not dispute that in this case the putative class exceeds 100 members and that there is minimal diversity.  (Doc. Nos. 1, 17, 23, 25.)  The sole dispute on the pending motion to remand centers around whether the amount in controversy exceeds $5 million.  Plaintiff argues that defendant has failed to show that the amount in controversy exceeds $5,000,000.  (Doc. No. 17 at 13–24.)  Defendant argues that its calculation of the amount in controversy in its notice of removal is reasonable considering the breadth of plaintiff's allegations and that it has therefore met its burden as to the amount in controversy.  (Doc. No. 23 at 7.)  Below, the court will address defendant's calculations with respect to each claim.

In its notice of removal, defendant relies upon a declaration from Tina Jeffcoat ("Jeffcoat"), its vice president of administration, to support its amount in controversy calculations.  (Doc. No. 1-5 at 1–4.)  In her role, Jeffcoat is "responsible for human resources, insurance, risk management, contract administration, and employee payroll functions for all California-based BMI operations."  (*Id.* at 2.)  She asserts that she has "knowledge of the facts set forth" in her declaration.  (*Id.*)  Jeffcoat "reviewed employment and payroll records maintained by Defendant in the normal course and scope of business that pertain to the non-exempt employees that Defendant has employed in California between January 10, 2021 and January 26, 2025."  (*Id.* at 3.)

Her review of those records revealed that defendant employed approximately 262 non-exempt California employees between January 10, 2021 and January 26, 2025.  (*Id.*)  During that period, these employees worked approximately 16,276 hours at an average straight time pay rate of $29.46 per hour.  (*Id.*)  During the class period, the mean minimum wage in California was $15.00 per hour.  (*Id.*)  Jeffcoat asserts that "the vast majority of BMI's non-exempt workforce in California has been comprised of full-time employees."  (*Id.* at 3, 4.)  Those employees "worked an average of 5.31 overtime hours per workweek, and 0.24 hours of double-time hours per week."  (*Id.* at 3.) (emphasis omitted).  "159 putative class members worked approximately 5,329 pay periods, during the period of January 10, 2024 and January 26, 2025."  (*Id.*) (emphasis omitted).  Plaintiff "worked approximately 10 workweeks for BMI in California from January 10, 2021 and

7

1  January 26, 2025 and was paid at hourly rate of $18.00/hour." (*Id.* at 4) (emphasis omitted).

2  Plaintiff does not challenge the accuracy of this evidence. (*See* Doc. Nos. 17; 25).  Moreover,

3  courts have held that defendants may rely upon such evidence in calculating the amount in

4  controversy. *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir.

5  Dec. 27, 2023) ("A defendant is permitted to rely on a declaration from an individual who has

6  reviewed relevant employee payroll and wage data to support its amount in controversy

7  allegations.");[2] *Marquez v. Southwire Co.*, No. 21-cv-00252-JGB-SP, 2021 WL 2042727, at *3–4

8  (C.D. Cal. May 21, 2021) (finding declaration from defendant's director of finance that disclosed

9  the number of employees during the class period, the number of workweeks they worked, and

10  their average hourly pay rate to be sufficient).  Accordingly, the court concludes that Jeffcoat's

11  declaration provides a sufficient basis for defendant to rely upon in calculating the amount in

12  controversy.

13                 a.    *Overtime Wages Claim*

14         In its notice of removal, defendant concludes that "the potential amount in controversy for

15  unpaid overtime is at least $3,819,145.50." (Doc. No. 1 at 17) (emphasis omitted).  To arrive at

16  this number, defendant takes the average number of hours the class worked in weekly overtime

17  and multiplies it by the total number of workweeks throughout the class period and the average

18  hourly overtime pay for the class.[3] (*Id.*)  In his motion to remand, plaintiff contends that

19  defendant's calculation is unreasonable. (Doc. No. 17 at 13, 14.)  Specifically, he argues that "[i]t

20  makes no sense to assume that every full-time class member, at a given moment, worked 5.31

21  hours of unpaid overtime per week, given the 'but not all' language" in his complaint. (*Id.* at 13.)

22  (emphasis omitted) (citation omitted).  Plaintiff also contends that defendant's calculation is

23  unreasonable because plaintiff seeks damages for the unpaid balance of overtime compensation,

24  ───────────────────

25  [2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

26
27  [3] "([16,276 Workweeks] x [5.31 Unpaid Overtime Hours Per Week]) x ($44.19 Average Overtime Rate of Pay))." (Doc. No. 1 at 17.)  Defendant includes the full four-year period because plaintiff seeks restitution for all unpaid wages, including overtime, under California

28  UCL. (*Id.*); (Doc. No. 1-4 at ¶4950.)

1    not for the entire amount of overtime that the affected class members worked during the class

2    period.  (*Id.* at 14.)

3          A removing defendant may use "a chain of reasoning that includes assumptions" in

4    calculating the amount in controversy.  *Ibarra*, 775 F.3d at 1199.  However, "those assumptions

5    cannot be pulled from thin air" and "need some reasonable ground underlying them."  *Id.*

6    "Reasonable grounds may be established on the basis of the complaint and extrinsic evidence."

7    *Tercero v. C&S Logistics of Sacramento/Tracy LLC*, No. 24-cv-00963-DC-JDP, 2024 WL

8    4826348, at *5 (E.D. Cal. Nov. 19, 2024) (internal quotation marks and citation omitted).

9          "What makes an assumption reasonable may depend on which element of the amount-in-

10   controversy calculation is at issue."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).

11   For example, when the number of employees in a wage and hour class action is in dispute, it

12   "may make sense to expect a defendant to introduce evidence" of that number because it can

13   easily be "determined by examining the defendant's employment records."  *Id.*  In contrast, "it

14   makes little sense to require a CAFA defendant to introduce evidence of the violation rate—

15   really, the alleged violation rate—because the defendant likely believes that the real rate is zero

16   and thus that the evidence does not exist."  *Id.*  (emphasis omitted). In that case, "a CAFA

17   defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint."  *Id.*

18         Here, in his complaint plaintiff alleges that "Plaintiff and other class members were

19   required to work more than eight (8) hours per day and/or forty (40) hours per week without

20   overtime compensation."  (Doc. No. 1-4 at ¶ 34.)  The complaint further alleges that "[a]s a

21   pattern and practice, during the relevant time period set forth herein, Defendants intentionally and

22   willfully failed to pay overtime wages owed to Plaintiff and other class members (but not all)."

23   (*Id.* at ¶ 48.)

24         "Whether the alleged violations occur from time to time, as a matter of pattern and

25   practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in

26   controversy calculation."  *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG,

27   2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024).  "Pattern and practice" allegations can justify

28   a 100% violation rate if the complaint alleges that such conduct was "universally followed every

1  time the wage and hour violation could arise." *Ibarra*, 775 F.3d at 1199.  In her declaration,

2  Jeffcoat asserts that "[f]rom January 10, 2021 and January 26, 2025, the vast majority of BMI's

3  non-exempt workforce in California has been comprised of full-time employees." (Doc. No. 1-5

4  at 3–4.)  She further states that employees worked on average 5.31 hours of weekly overtime

5  during this period.[4]  (*Id.* at 3.)

6          Although not expressly stated, in its calculation defendant assumes a 100% violation rate.

7  *Biag v. King George - J&J Worldwide Servs. LLC*, No. 20-cv-00307-BAS-DEB, 2020 WL

8  4201192, at *5 (S.D. Cal. July 22, 2020) ("[A] 100% violation rate . . . . argues a violation was

9  committed against each member of the class 100% of the time alleged for each claim, *i.e.* every

10  employee experienced a violation each day.")  However, plaintiff's complaint alleges that

11  defendant "failed to pay overtime wages to Plaintiff and other class members for *all* hours

12  worked." (Doc. 1-4 at ¶ 34) (emphasis added).  This allegation does not support a 100% violation

13  rate.  *Valdez v. Fairway Indep. Mortg. Corp.*, No. 18-cv-02748-CAB-KSC, 2019 WL 3406912, at

14  *4 (S.D. Cal. July 26, 2019) ("The allegation that Plaintiff and the putative class were not paid for

15  'all' overtime . . . .  support[s] the inference that she and members of the putative class received

16  some, but not all, of overtime owed.  As such, application of a 100% violation rate is unwarranted

17  and speculative.").

18  /////

19  /////

20  /////

21  /////

22  /////

23  ———————————

24  [4]  For the first time in his reply, plaintiff alternatively argues that defendant's calculation is unreasonable because defendant fails to establish the average shift length for all 262 putative
25  class members thereby justifying the assumption that each of them would be entitled to overtime wages.  (Doc. No. 25 at 12–13.)  The court "need not consider arguments raised for the first time
26  in a reply brief.*" Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted).  Moreover, "[d]efendant is not required to comb through its records to identify and calculate the
27  exact frequency of violations."  *Andrade v. Beacon Sales Acquisition, Inc.*, No. 19-cv-06963-CJC-RAO, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (internal quotation marks and
28  citations omitted).   Accordingly, the court rejects plaintiffs' argument in this regard.

10

1     The court concludes defendant's 100% violation rate assumption is unreasonable.[5]

2     However, the court cannot disregard the amount in controversy with respect to plaintiff's

3     overtime claim. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022)

4     ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate

5     basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from

6     the alternative assumption."); *Ramos v. Schenker, Inc.*, No. 18-cv-01551-JLS-KK, 2018 WL

7     5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("[B]eyond actual evidence, district courts may consider

8     context and reasonable conjecture when evaluating a removal premised on CAFA jurisdiction.").

9     When faced with an unreasonable violation rate, other district courts have reduced a

10    defendant's proposed calculations to align with more reasonable assumptions that can be made on

11    the basis of the plaintiff's complaint. *See e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-

12    cv-02127-JGB-SP, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (lowering violation rate to

13    one hour per week of unpaid overtime based on plaintiff's "pattern and practice" allegations);

14    *Graham v. IFCO Sys. N.A., Inc.*, No. 17-cv-00074-SJO-SP, 2017 WL 1243498, at *5 (C.D. Cal.

15    Mar. 3, 2017) (lowering defendant's rate from five hours to one hour of unpaid overtime hours

16    per week to align with the language in the plaintiff's complaint). Here, plaintiff does not suggest

17    an alternative violation rate. *Perez*, 131 F.4th at 810 ("And if Perez believed that some other

18    assumption would have been more reasonable, she was free to propose that rate.") (emphasis

19    omitted). The court must therefore consider what violation rate would be reasonable to assume

20    considering the allegations of the operative complaint.

21    Courts have held that violation rates between 20 to 60% are appropriate when a plaintiff

22    makes "pattern and practice" allegations. *See Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-

---

23    [5] Defendant contends that its overtime calculation assumptions are reasonable in light of the
24    overlapping *Fuentes* CAFA Action pending before the Central District of California. (Doc. No.
      23 at 8.) However, the district court in that case denied the plaintiff's motion to remand after a
25    hearing on an order to show cause where defendant supplied the court with further evidence
      justifying its calculations. That further evidence is neither discussed in the district court's order
26    nor does defendant supply the undersigned with any additional evidence here. And as outlined
27    above, the court cannot consider the information contained in the *Fuentes* complaint and
      declaration for the truth of the matter asserted in either document. Thus, the court finds reference
28    to *Fuentes* both unpersuasive and unhelpful in resolving the pending motion.

09955-BLF, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022) (collecting cases); *Ramos*, 2018 WL 5779978, at *3 (internal quotation marks omitted) ("The Court agrees with the courts in this circuit that have concluded that an assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation."). Yet where, as here, the complaint also alleges overtime violations that affected "Plaintiff and other class members (but not all)," courts suggest that up to a 20% violation is a reasonable assumption. *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding 20% violation rate reasonable where the plaintiff alleged that defendant had a "'pattern and practice' of failing to pay overtime wages to 'Plaintiff and other class members (but not all)'"); *Cortez v. Parker-Hannifin Corp.*, No. 2:20-cv-06430-AB-KK, 2020 WL 5905435, at *3–4 (C.D. Cal. Oct. 6, 2020) (finding a violation rate of one unpaid hour of overtime per week for 50% of the total workweeks to be reasonable); *cf. Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (concluding that a 20% violation rate is reasonable when accounting for the possibility that not all putative class members worked overtime).

Accordingly, the court will apply a 20% violation rate—meaning one hour of unpaid overtime per week—to the overtime amount in controversy given the allegations in plaintiff's complaint. *Wheatley*, 2019 WL 688209, at *5 (finding one hour per class member per week a reasonable estimate where plaintiff's complaint did not allege that every class member worked uncompensated overtime each day). The court therefore finds that the amount in controversy in this action for overtime wages is $719,236.44.[6]

/////

/////

/////

/////

---

[6] The court calculated this number by modifying defendant's formula to account for a 20% violation rate, which amounts to one hour of unpaid overtime per week. That formula is: ([16,276 Workweeks] x [1 Unpaid Overtime Hours Per Week]) x ($44.19 Average Overtime Rate of Pay)).

b.     *Meal Break Claim*

For the meal period violations, defendant concludes that $1,438,472.88 is the amount in controversy. [7] (Doc. No. 1 at 19.)  To reach this number, defendant assumes that the putative class missed three out of five first meal breaks per week, equating to a 60% violation rate.  (*Id*. at 18).  In his motion to remand, plaintiff argues that defendant's calculations are unreasonable given the "pattern and practice" and "but not all" qualifiers appearing in the allegations of his complaint.  (Doc. No. 17 at 17.)

In his complaint, plaintiff alleges that he "and other class members (but not all)" worked more than five hours without an uninterrupted 30-minute meal period.  (Doc. No. 1-4 at ¶¶ 56, 58.)  Courts have held that a meal premium violation rate ranging from 20 to 60% is reasonable when plaintiffs allege that defendants engaged in a "pattern and practice" that affected "plaintiff and some class members (but not all)."  *See e.g.*, *Sanchez v. Abbott Lab'ys*, 20-cv-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (concluding that a 60% violation rate is reasonable where plaintiff alleged a pattern and practice that affected plaintiff and other class members, but not all); *Cunningham v. Sharecare CL, LLC*, No. 23-cv-02564-DJC-CSK, 2024 WL 3738688, at *3–4 (E.D. Cal. Aug. 9, 2024) (finding defendant's 37.8% violation rate assumption to be reasonable based on identical allegations in the plaintiff's complaint); *Cortez*, 2020 WL 5905435, at *3–4 (finding 1 meal break violation per week reasonable where plaintiff alleged that violations happened to "Plaintiff and other class members (but not all)"); *Wicker v. ASC Profiles LLC*, No. 19-cv-02443-TLN-KJN, 2021 WL 1187271, at *3 (E.D. Cal. Mar. 30, 2021) (finding a 20% violation rate reasonable in the meal breaks context on the basis of identical allegations appearing in the plaintiff's complaint).  Thus, defendant's initial proposal of 3 missed first meal periods per week is reasonably based on the allegations of plaintiff's complaint.

/////

/////

---

[7]  Defendant uses the following formula: ([16,276 workweeks] x [3 non-compliant mean breaks per week] x [29.46 average hourly rate]).  (*Id.* at 19.)  Because plaintiff also seeks meal period premiums pursuant to California's UPL statute, defendant includes the full four-year period of workweeks. (Doc. Nos. 1 at 18; 1-4 at ·¶¶ 114–117.)

1    However, where defendants do not offer any evidence to show the number of full-time

2    employees in the putative class, it is most reasonable to assume that 75% of the putative class

3    suffered violations at that rate.  *See Ortega v. ITS Techs. & Logistics, LLC*, 21-cv-00562-JWH-

4    KK, 2021 WL 4934978, at *3–4 (C.D. Cal. Oct. 22, 2021) (finding it reasonable to assume that

5    meal and rest period violations affected 75% of the putative class where defendant only presented

6    evidence of putative class members, their aggregate number of work weeks, and their average

7    hourly pay rate).  Here, defendant offers no evidence regarding the exact number of putative class

8    members who it employed full-time.  Indeed, the closest that defendant gets to disclosing this

9    number is in Jeffcoat's declaration in which she states that during the class period "the *vast*

10   *majority* of BMI's non-exempt workforce in California has been comprised of full-time

11   employees."  (Doc. No. 1-3 at 3–4) (emphasis added.)  This necessarily concedes that the entire

12   workforce is not comprised of all full-time employees.  However, as in *Ortega*, Jeffcoat's

13   declaration does disclose the number of putative class members, their aggregate number of work

14   weeks, and their average hourly pay rate.  (Doc. No. 1-5 at 3.)  Thus, the court concludes that it is

15   reasonable to adjust defendant's calculation to reflect the reasonable assumption that 75% of the

16   putative class suffered three meal period violations per week.

17    Plaintiff contends that defendant's assumptions of three meal period violations per week

18   are unreasonable because "Defendant offers no evidence or analysis whatsoever to support" its

19   calculations and "Defendant randomly assumes these violation rates because such a percentage is

20   purportedly 'reasonable' and 'conservative' based on Plaintiff's allegations in the Complaint."

21   (Doc. No. 17 at 17.)  However, plaintiff's argument on this point reflects a misunderstanding as to

22   defendant's burden.  The Ninth Circuit has recently clarified a defendant's burden when a

23   plaintiff challenges the amount in controversy on a motion to remand.  *See Perez*, 131 F.4th at

24   809.  There, the court held that:

25    The key to our holding in *Ibarra* was that the defendant had to submit
      evidence of the violation rate because its interpretation of the
26    allegations in the complaint *was unreasonable*.  Our decision
      suggests only that if a violation rate cannot be justified by the
27    allegations in the compliant, it must be justified by something else.
      We did not hold that violation rates drawn from *reasonable*

28

14

1    interpretations of the complaint must independently be supported by
2    competent evidence.

3    *Id.* (emphasis in original).

4    Accordingly, defendant was not required to submit further evidence because its

5    assumptions are "reasonably founded on the allegations of the complaint[.]" *Arias*, 936 F.3d at

6    925. Therefore, the court finds that the amount in controversy as to the alleged meal period

7    violations is $1,078,854.66.[8]

8                            c.    *Rest Break Claim*

9    For plaintiff's rest break claim, defendant concludes that the amount in controversy is

10   $1,438,472.88. (Doc. No. 1 at 22.) To reach this number, defendant assumes that the putative

11   class members missed three non-compliant first or second rest breaks per week during the class

12   period. (*Id.* at 21.) Defendant then multiplies this number by the total number of workweeks that

13   the putative class worked and the class's average hourly pay rate. (*Id.* at 21, 22.)[9] In response,

14   plaintiff asserts that the language in his complaint does not support this calculation. (Doc. No. 17

15   at 17.) In his complaint, plaintiff alleges "[a]s a pattern and practice, during the relevant time

16   period set forth herein, Defendants required Plaintiff and other class members (but not all) to

17   work four (4) or more hours without authorizing or permitting a ten (10) minute rest period each

18   four (4) hour period worked." (Doc No.1-4 at ¶ 68.)

19   Courts have found that violation rates ranging from 10 to 40%—meaning one to four out

20   of ten missed rest breaks per week—are reasonable when the complaint makes pattern and

21   practice allegations. *Sanchez*, 2021 WL 2679057, at *5 (applying a 20% violation rate where

22   plaintiff alleged a pattern and practice of rest break violations that affected "plaintiff and other

23

24   _____

     [8] The court arrives at this number by multiplying defendant's original calculations by 0.75 to
25   account for a reasonable estimate of the number of putative class members that suffered meal
     period violations.

26
     [9] "([16,276 Workweeks] x [3 Non-Compliant Rest Breaks Per Week]) x ($29.46 Average Hourly
27   Rate))." (*Id.* at 22.) As with plaintiff's meal break claim, he seeks additional penalties for his
     rest period claim pursuant to the California UPL, so defendant has included the full four-year
28   period of workweeks in its calculation. (Doc. Nos. 1 at 21; 1-4 at ·¶¶ 114–117.)

                                         15

1   class members (but not all)"); *Cunningham*, 2024 WL 3738688, at *4 (recognizing that a 40%

2   violation rate would be reasonable when the complaint makes "pattern and practice" allegations

3   that affected "plaintiff and other class members (but not all)," but adopting defendant's proposal

4   of a 37.8% violation rate); *Wicker*, 2021 WL 1187271 at *3 (finding that defendant's assumption

5   of one out of ten missed weekly rest breaks or a 10% violation rate was reasonable).

6          Therefore, defendant's proposed violation rate of three missed rest break periods—which

7   amounts to a 30% violation rate—is reasonable based on the allegations of plaintiff's complaint.

8   However, defendant's calculations suffer from the same issue as those related to the meal period

9   claim.  Indeed, district courts faced with identically vague pleadings have assumed that the entire

10  putative class was entitled to ten rest periods per week only because the defendant provided

11  evidence of the number of full-time employees.  *See Sanchez*, 2021 WL 267905, at *2, *5

12  (defendant's declaration stated that at all times "the putative class members were scheduled to

13  work approximately eight hours per day and five days per week); *Cunningham*, 2024 WL

14  3738688, at *3, *4 ("Defendants have provided a breakdown of how many hourly full-time

15  equivalent employees in California they had on average.")  Here, as outlined above, Jeffcoat's

16  declaration does not disclose the number of full-time California employees who worked for

17  defendant during the relevant class period.  Accordingly, the court adjusts defendant's calculation

18  to reflect the reasonable assumption that 75% of the class suffered three rest break violations per

19  week.  *Ortega*, 2021 WL 4934978, at *3–4 (finding it reasonable to assume that 75% of the

20  putative class suffered defendant's proposed rest period violations to account for not all members

21  suffering this injury). Therefore, the court finds that the amount in controversy as to plaintiff's

22  rest break claim is $1,078,854.66.[10]

23          d.    *Wage Statement Claim*

24          In its notice of removal, defendant asserts that the amount in controversy for wage

25  statement violations is $524,950.  (Doc. No. 1 at 24.)  Jeffcoat's declaration reveals that 159

26  putative class members worked 5,329 pay periods from January 10, 2024 to January 26, 2025.

---

[10] The court again multiplies defendant's original calculation by 0.75 to reflect the reasonable assumption.

16

(Doc. No. 1-5 at 3.)  Defendant assumes that all 159 putative class members were provided

deficient wage statements during that period which would entitle them to wage statement

damages.  (Doc. No. 1 at 24.)[11]  In his motion to remand, plaintiff argues that defendant's 100%

violation rate assumption is unreasonable given the "not all" language appearing in his complaint.

(Doc. No. 17 at 21.)

In his complaint plaintiff alleges that:

> As a pattern and practice, Defendants have intentionally and willfully failed to provide Plaintiff and other class members (but not all) with complete and accurate wage statements.  The deficiencies include but are not limited to:  the failure to include the total number of hours worked by Plaintiff and other class members.

(Doc. No 1-4 at ¶ 86.)  It is further alleged that "[p]laintiff and other class members are entitled to

recover from Defendants the greater of their actual damages caused by Defendants' failure to

comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four

thousand dollars per employee." (*Id.* at ¶ 89.)

Inaccurate wage statement penalties are derivative of meal and rest period violations.

*Sanchez*, 2021 WL 2679057, at *6.  Thus, "when meal period and rest period violation rates are

found reasonable, courts have held a 100% wage statement inaccuracy assumption may also be

reasonable."  *Id.* (citation omitted); *Wicker*, 2021 WL 1187271, at *4 ("[S]ince one missed meal

and rest period was reasonable, that would mean that every wage statement was inaccurate and

subject to penalties") (internal quotation marks and citation omitted).  As outlined above, the

court has identified and calculated the reasonable violation rates related to plaintiff's meal and

rest period violation claims.  Since there are identifiable violation rates for these claims, it is

reasonable to assume a 100% violation rate for plaintiff's wage statement claims.  Accordingly,

defendant's wage statement calculation is also reasonable and places an additional $524,950 in

controversy.

/////

---

[11] Defendant uses the following formula to reach $524,950:  "((Initial Violations ($50.00) x 1 Pay Period Per Employee (159)) + (Subsequent Violations ($100.00) x Remaining Pay Periods Less Initial Violations (5,329 – 159)))."  (*Id.*)

17

1          e.          *Waiting Time Penalties*

2          In its notice of removal, defendant concludes that the waiting time penalties amount in

3    controversy equals $1,182,195.50.  (Doc. No. 1 at 24.)[12]  In his motion to remand, plaintiff

4    contends that he "never alleged that he and the putative class were entitled to the full 30 days for

5    every employee."  (Doc. No. 17 at 21.)  He insists that because of the "qualifying language,

6    unambiguously stating that, 'not all' were entitled to recover" the complaint "suggests that there

7    are some class members who would be entitled to no recovery at all or recovery for less than the

8    30-day maximum."  (*Id.*)

9          In his complaint, plaintiff alleges that "Plaintiff and other class members are entitled to

10   recover from Defendants the statutory penalty wages for each day they were not paid, up to the

11   thirty (30) day maximum as provided by Labor Code section 203."  (Doc. No. 1-4 at ¶ 83.)

12   District courts have reached different conclusions as to whether a 100% violation rate is

13   reasonable when faced with allegations identical to those before the court here. *Compare Bandril*

14   *v. Plastikon Indus. Inc.*, No. 19-cv-07439-RS, 2020 WL 13888355, at *4 (N.D. Cal. Jan. 6, 2020)

15   (finding 100% wage statement violation to be unreasonable), *with Cunningham*, 2024 WL

16   3738688, at *4 (finding 100% violation rate to be reasonable).  However, in cases where a 100%

17   violation rate was deemed reasonable, the defendant had provided the number of full-time

18   employees that it employed during the relevant period.  *See e.g.*, *Cunningham*, 2024 WL

19   3738688, at *3–4.

20          Here, defendant's calculations assumes that that each employee who departed during the

21   relevant period worked eight hours per day.  (Doc. No. 1 at 24.)  Beyond defendant's broad

---

22   [12]  To reach this number, defendant first calculates the daily waiting time penalty per employee
23   using the following formula: "((Average Hourly Rate ($29.26) x 8) + ((1.062 x Average
     Overtime Rate ($29.26 x 1.5)) + (0.048 x Average Double Time Rate ($29.26 x 2)))."  (Doc. No.
24   1 at 24.)  That number amounts to a daily waiting time penalty of $283.50 per employee.  (*Id.*)  It
     includes the average hourly straight-time pay rate of $29.26, weekly overtime of 5.31 hours,
25   average double-time of 0.048 hours, and assumes that each employee worked a five-day
     workweek.  (*Id.* at 23.)  Defendant then multiplies the daily waiting time penalty rate by 139 and
26   30.  (*Id.*)  139 represents the number of non-exempt employees who "separated from employment
     with Defendant" from January 10, 2022 to January 26, 2025.  (*Id.* at 23.)  Defendant further
27   assumes that all 139 employees would be entitled to the 30-day maximum in waiting time
     penalties.  (*Id.* at 24.)
28

1    allegations that "the vast majority of BMI's non-exempt workforce in California has been

2    comprised of full-time employees," nowhere do the allegations in the complaint nor in the

3    evidence submitted by the parties in their briefs reveal the number of employees who were

4    actually employed full-time by defendant.  (*See generally* Doc. Nos. 1-4, 1-5.)  Since the factual

5    allegations in the complaint do not provide a sufficient basis upon which to conclude that all of

6    the employee worked eight-hour shifts and defendant have failed to come forward with evidence

7    justifying it, defendant's proposed 100% violation rate is unreasonable.  However, once again, the

8    court cannot simply assign $0 to this claim if it identifies alternative reasonable assumptions.

9    *Jauregui*, 28 F.4th at 994.

10          Another district court has found that it was reasonable to assume that 75% of a putative

11   class of employees were entitled to receive based upon allegations in the complaint and the

12   defendant's employment data that were identical to this case.  *Ortega*, 2021 WL 4934978, at *5

13   n.34 (calculating waiting time penalties using the following formula: [number of employees who

14   departed during the relevant period] x [8 hours] x [30 days] x [average rate of pay] x 0.75).

15   Importantly, the court there found that this calculation rate was reasonable in light of the

16   plaintiff's broad allegations that they were entitled to recover "penalty wages for each day they

17   were not paid, up to the thirty (30) day maximum[.]"  *Id.* at *5 (internal quotation marks omitted).

18          Here, a review of plaintiff's complaint reveals that he makes the exact same allegations

19   that were deemed to be significant in *Ortega*.  (*See* Doc. No. 1-4 at ¶ 82) ("Plaintiff and other

20   class members are entitled to recover from Defendants the statutory penalty wages for each day

21   they were not paid, up to the thirty (30) day maximum as provided by Labor Code section 203.").

22   Moreover, as in *Ortega*, Jeffcoat's declaration discloses the number of employees who worked

23   during the class period, the number of workweeks that they worked during the class period, and

24   their average hourly pay rate.  (Doc. No. 1-5 at 3.)  Thus, the court concludes that amending

25   defendant's formula to reflect a more conservative and reasonable estimate is appropriate in this

26   case.  Accordingly, the amount in controversy here for waiting time penalties is $732,085.20.[13]

27

28   ────────────────
     [13] This number is arrived at using the following formula: 139 employees x 8 hours x 30 days x
     $29.26 average rate of pay x 0.75, which mirrors the calculation found reasonable in *Ortega*.

1              f.      *Attorneys' Fees*

2              In its notice of removal, defendant estimates that plaintiff's attorneys' fees will be at least

3      33% of the total amount recovered for plaintiff's claims, which equals $3,700,514.63.  (Doc. No.

4      1 at 26.)  To reach this number, defendant's counsel determined that in "18 published orders in

5      California and federal Courts over the past four years involving a wage and hour class action with

6      Justice Law Corporation as class counsel (which the undersigned could locate), Justice Law

7      Corporation was awarded attorneys' fees in the range of 30% to 38% on each occasion."  (Doc.

8      Nos. 1 at 25; 1-4 at 88–125.)  In his motion to remand, plaintiff contends that defendant's

9      attorneys' fees calculation should be stricken.  (Doc. No. 17 at 24.)  Specifically, he argues that

10     because the attorneys' fees are based upon statute, the requisite fee shifting provisions to not

11     apply to meal and rest period claims.  (*Id.* at 23, 24.)

12             "It is well established that a defendant may include attorneys' fees in calculating the AIC

13     pursuant to CAFA."  *Vigil v. DAK Res., Inc.*, No. 23-cv-00163-TLN-AC, 2023 WL 5917522, at

14     *4 (E.D. Cal. Aug. 11, 2023) (citation omitted).  "[T]he defendant must prove the amount of

15     attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of

16     its evidentiary burden by adopting a per se rule for one element of the amount at stake in the

17     underlying litigation."  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir.

18     2018).

19             At this point in its analysis, the court has concluded that a total of $4,133,980.96 has been

20     placed into controversy in this action excluding attorneys' fees.  Despite plaintiff's contentions,

21     the court concludes that defendant has satisfied its showing by a preponderance of the evidence

22     that it is appropriate to apply a 33% recovery fee in attorneys' fees to the total amount in

23     controversy.  *Bartholomew v. Goodman Mfg. Co., L.P.*, No. 22-cv-00027-TLN-AC, 2022 WL

24     4355147, at *8 (E.D. Cal. Sept. 20, 2022) (concluding that the defendant's assumption as to the

25     amount of attorneys' fees was reasonable because defendant showed that plaintiff's counsel

26     received attorneys' fees in prior wage and hour class actions in an amount equal to defendant's

27     presumed calculation rate); *Thompson v. Fastaff, LLC*, No. 22-cv-03584-SVW-MAA, 2022 WL

28     4109450, at *7 (C.D. Cal. Sept. 8, 2022) ("[Defendant's] calculation of attorneys' fees based on a

1    similar prior case brought by Plaintiffs is reasonable.").  Applying 33% to the amount in

2    controversy calculated up to this point places defendant's prospective liability at $5,498,194.67.

3        Accordingly, the court concludes that the CAFA amount in controversy requirement has

4    been satisfied and the court need not analyze plaintiff's contentions as to the remaining claims.

5    Therefore, the court will deny plaintiff's motion to remand and turn to address defendant's

6    motion to dismiss.

7    **B.    Motion to Dismiss**

8        Defendant moves to dismiss all of plaintiff's state labor code claims pursuant to the first-

9    to-file rule.  (Doc. No. 12 at 6.)  Specifically, defendant contends that rule applies because the

10   *Fuentes* CAFA Action case pre-dates the instant action, both actions seek to represent the same

11   class of employees, and both cases allege eight identical causes of action. (*Id.* at 10.)  In response,

12   plaintiff urges the court to deny the motion because defendant burdened the court by removing

13   the instant action from state court.  (Doc. No. 18 at 6.)

14       Defendant additionally moves that the court dismiss or stay the PAGA claim pursuant to

15   the decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800

16   (1976).  (Doc. No. 12 at 11.)  Defendant asserts that all eight *Colorado River* factors are satisfied

17   here, which justifies the dismissal of the PAGA claim.  (*Id.* at 12.)  In response, plaintiff contends

18   that it is inappropriate to dismiss or stay his PAGA claim because defendant has engaged in

19   forum shopping by removing this action to federal court.  (Doc. No. 18 at 7.)

20       1.    <u>Requests for Judicial Notice</u>

21       Both parties request that the court take judicial notice of various court filings in support of

22   their briefs on the pending motion to dismiss.  (Doc. Nos. 13; 19.)  Defendant requests that the

23   court take judicial notice of the complaint filed in the *Fuentes* state court PAGA action and the

24   complaint originally filed in state court in the instant action.  (Doc. Nos. 13-3; 13-4.)  Plaintiff

25   requests that the court take judicial notice of a complaint he filed against defendant in the Orange

26   County Superior Court alleging various violations under California's Fair Employment and

27   Housing Act.  (Doc. No. 19.)  For the reasons outlined in the preceding motion to remand, the

28   /////

1    court takes judicial notice of the existence of these documents and the causes of action set forth

2    therein.

3            2.    <u>First-to-File</u>

4            Defendant urges the court grant its motion to dismiss pursuant to the first-to-file rule

5    because two different cases are now pending in other courts that were filed before the instant

6    action.  (Doc. No. 12 at 6.)  It argues that allowing this action to proceed would burden this court

7    with "needless and duplicative litigation."  (*Id.*)  In response, plaintiff contends that  defendant's

8    motion "must be denied in its entirety" because defendant's removal of the pending action to

9    federal court "is the direct cause of the inefficiencies and burdening purportedly plaguing the

10   courts."  (Doc. No. 18 at 4.)

11           In determining whether the first-to-file rule applies, courts analyze three factors:  (1)

12   chronology of lawsuits; (2) similarity of the parties; and (3) similarity of the issues.  *Kohn L.*

13   *Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).  However, even if

14   all three factors are satisfied, equitable considerations may warrant disregarding the first-to-file

15   rule.  *Guerra v. United Nat. Foods, Inc.*, No. 18-cv-02382-VAP-SHK, 2019 WL 13203962, at *7

16   (C.D. Cal. Mar. 27, 2019) (citation omitted).  Those considerations include bad faith, anticipatory

17   suit, and forum shopping.  *Id.* (citation omitted).  Furthermore, district courts in this circuit have

18   declined to stay or dismiss an action pursuant to the first-to-file rule when the first-filed action

19   has been stayed pending arbitration.  *See Zou v. Mkt. Am., Inc.*, No. 19-cv-01282-LHK, 2019 WL

20   13218583, at *8 (N.D. Cal. Sept. 12, 2019) (declining to stay the action pursuant to the first-to-

21   file rule despite all three factors weighing in favor of application because the first-filed case was

22   stayed pending arbitration); *Pena v. Experian Info. Sols., Inc.*, 22-cv-01115-SSS-ADS, 2023 WL

23   6787809, at *3 (C.D. Cal. Sept. 22, 2023) (finding the fact that the prior case was stayed pending

24   arbitration among the most "significant consideration[s] weighing against a stay" in the case

25   pending before it) (alteration in original).

26           A review of the docket in the pending *Fuentes* CAFA Action reveals that on June 9, 2025

27   the district court granted defendant's motion to compel arbitration, thereby dismissing the

28   plaintiff's class claims and staying the action pending the resolution of arbitration.  (*Fuentes*,

Doc. No. 55.)  Because the class claims in the *Fuentes* action are no longer pending, defendant's motion to dismiss based on the pendency of those claims has been rendered moot.  *Maharaj v. Charter Commc'ns, Inc.*, No. 20-cv-00064-BAS-LL, 2021 WL 689915, at *3 (S.D. Cal. Feb. 23, 2021) (denying as moot defendant's motion to dismiss based on the first-to-file rule where the first-filed state case was stayed and compelled to arbitration).  Therefore, the court will not grant defendant's motion to dismiss to the extent it is based upon the first-to-file rule.

       3.    *Colorado River*

       Defendant also argues that plaintiff's PAGA claim should be dismissed pursuant to *Colorado River* since the *Fuentes* plaintiff filed an individual PAGA claim in state court prior to the filing of the instant complaint.  (Doc. No. 12 at 12.)  In response, plaintiff in this action argues that while "numerous other factors" support application of *Colorado River*, the court should not dismiss or stay his PAGA claim because defendant is responsible for removing the case to federal court.  (Doc. No. 18 at 7) ("By removing the action to federal court Defendant necessarily relied on this Court's jurisdiction over all claims, and the Court should not therefore reward Defendant for its gamesmanship by declining to exercise it now.").

       In determining whether a dismissal or stay pursuant to *Colorado River* is appropriate, courts consider eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841–42 (9th Cir. 2017) (citation omitted).  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'"  *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).  While no single factor is determinative, "certain of the eight factors are 'dispositive;' in particular, 'substantial doubt as to whether the state proceedings

/////

1    will resolve the federal action precludes the granting of a stay.'" *O'Connor v. Uber Techs., Inc.*,

2    No. 13-cv-03826-EMC, 2016 WL 11556426, at *2 (N.D. Cal. Feb. 4, 2016) (citation omitted).

3        In the *Fuentes* PAGA Action, the plaintiff there asserted that defendant failed to pay

4    minimum wages, overtime wages, failed to provide meal periods and rest breaks, failed to timely

5    pay wages during employment, failure to pay wages upon termination and related waiting time

6    penalties, failed to furnish accurate wage statements, violation of whistleblower protection, and

7    failure to reimburse for business expenses. (Doc. No. 13-3 at ¶¶ 18–31.) In the pending action,

8    plaintiff's PAGA claim asserts that defendant failed to pay minimum wages, overtime wages,

9    failed to provide meal periods and rest breaks, failed to timely pay wages during employment,

10   failed to pay wages upon termination and related waiting time penalties, failed to furnish accurate

11   wage statements, and failed to reimburse for business expenses. (Doc. No. 13-4 at ¶¶ 98–109.)

12            a.    *Final Factor*

13       Because the final *Colorado River* factor is dispositive here, the court will address it first.

14   *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 815 (N.D. Cal. 2015) ("Where there is such doubt

15   as to resolution of the federal action, a *Colorado River* stay is precluded, and the additional

16   factors need not be considered."). The final factor essentially considers "whether the prior

17   proceedings sufficiently parallel the federal proceeding." *Taylor v. AlliedBarton Sec. Servs. LP*,

18   No. 13-cv-01613-AWI-SKO, 2014 WL 1329415, at *13 (E.D. Cal. Apr. 1, 2014). The court

19   should not "grant a stay or dismissal under Colorado River if there is any substantial doubt as to

20   whether the parallel state-court litigation would completely and promptly resolve all issues

21   between the parties." *Maharaj*, 2021 WL 689915, at *7 (citation omitted).

22       When addressing this factor, other district courts faced with a motion to dismiss or stay a

23   PAGA claim in light of separate PAGA actions pending in state court have concluded that this

24   factor weighs against application of *Colorado River*. Importantly, in concluding that

25   consideration of this factor weighed against the application of *Colorado River*, those cases have

26   found it significant that the federal courts would still be required to resolve the underlying labor

27   disputes. *See Maharaj*, 2021 WL 689915 at *7 ("[Plaintiff] states additional claims for reporting

28   time violations and under the UCL and asks for remedies beyond the civil penalties awarded

24

1   under PAGA, meaning the State PAGA Actions cannot wholly resolve [Plaintiff's] federal case.");

2   *Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1016 (N.D. Cal. 2016) (denying partial stay when

3   federal action required resolution of labor law violations not asserted in the complaint filed in the

4   state action and although the state court could have resolved plaintiff's PAGA claims in their

5   entirety, the state action could not resolve all the issues before the federal court).

6          Here, as outlined above, in the present case plaintiff asserts a claim under the UCL.  (Doc.

7   No. 13-4 at ¶ 111–17.)  The *Fuentes* PAGA Action does not include such a claim.  (Doc. No. 5-3

8   at ¶¶ 14–31.)  Moreover, plaintiff here seeks injunctive relief, punitive damages, and

9   disgorgement, which is beyond the scope of the penalties sought in the *Fuentes* PAGA Action.

10  (Doc. No 13-4 at 32, 33.)  This court agrees with the decisions discussed above in which courts

11  have that this is significant and weighs against application of *Colorado River*.  Therefore, because

12  the dispositive factor weighs against application of *Colorado River*, the court concludes that a

13  dismissal or stay of the PAGA action here is unwarranted.  Nonetheless, the court finds it prudent

14  to also address the remaining *Colorado River* factors.

15              b.    *The Remaining Factors*

16          Before addressing the other factors, it is important to recognize that defendant here is

17  requesting the court to issue a partial stay by applying *Colorado River* solely to plaintiff's PAGA

18  claim.  *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1201 (9th Cir. 2021) ("With

19  a partial stay, there is still 'further litigation in the federal forum.'").  The Ninth Circuit has held

20  that partial stays are generally impermissible absent "rare circumstances" where there is a strong

21  showing of forum shopping.  *Id.* at 1206–07.  Here, neither party has made a strong showing of

22  forum shopping that would warrant the granting of a partial stay of this action.  Indeed, as the

23  party moving for the application of *Colorado River*, the closest that defendant gets to addressing

24  this factor at all is in merely stating "[a]ll relevant factors support dismissing Plaintiff Lopez's

25  PAGA cause of action."  (Doc. No. 12 at 12.)  Furthermore, in addressing forum shopping

26  concerns by way of a partial stay, the Ninth Circuit made clear that "[i]n the *Colorado River*

27  context, [we have] held that forum shopping weighs in favor of a stay when the party opposing

28  the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from

25

1   the application of federal court rules." *State Water*, 988 F.3d at 1206 (alteration in original)

2   (internal quotation marks and citations omitted).  There are no such concerns here because

3   plaintiff, the party opposing the stay, originally filed this case in state court and defendant, the

4   party moving for a partial stay, removed it to federal court.  Ultimately, the court concludes that

5   there has been no strong showing of forum shopping warranting the granting of the partial stay.

6          Moreover, while partial stays are not per se impermissible, the factor which recognizes the

7   desire to avoid piecemeal litigation would not be "well-served in this case by a partial stay."

8   *Sciortino*, 108 F. Supp. 3d at 815–16; *Tan*, F. Supp. 3d. at 1015–16 (refusing to grant stay of

9   PAGA claim since the court would still be required to resolve underlying labor code violations).

10  Another district court faced with a motion to dismiss or stay a putative class action

11  representative's PAGA claim in light of a separate PAGA action pending in state court has

12  addressed this factor in great detail.  *See Tan*, 171 F. Supp. 3d. at 1013, 1015–16.  In analyzing

13  this factor, the court held that:

14           The concerns associated with piecemeal litigation, including
             inconsistent adjudication, will exist regardless of a stay:   for
15           example, both courts will need to assess whether drivers were
             misclassified as independent contractors.  Thus, while resolution of
16           the PAGA claims in the state action in GrubHub's favor would
             definitively resolve Plaintiffs' PAGA claims and bind the rest of the
17           aggrieved-employee drivers to the judgment, that result is of little
             import where, as here, the federal court still must resolve the
18           underlying Labor Code violations.   While Defendants urge that
             resolution of the PAGA claims here will not fully resolve the
19           aggrieved employees' PAGA claims because Mitchell brings more
             PAGA claims than do Plaintiffs here, focusing solely on the PAGA
20           claims ignores the full scope of this federal action, which will
             proceed regardless of the state case.  In other words, there would be
21           no wasted effort here if the PAGA claims were to remain part of the
             case, since they are premised on the same facts as the underlying
22           Labor Code violations, which cannot be stayed.  The third factor
             therefore does not support a stay.
23

24  *Id.* at 1015–16 (internal citations omitted).  As with the case in *Tan*, here, granting a stay of

25  plaintiff's PAGA claim would result in piecemeal litigation not avoid it.  Even if the court granted

26  the partial stay for the PAGA claim, the court would still be required to resolve the remaining

27  /////

28

1    wage and hour claims.  Thus, consideration of this factor also does not support the granting of a

2    partial stay of plaintiff's PAGA claim.

3        Consideration of the remaining *Colorado River* factors also does not support granting

4    dismissal or stay of this action.  Neither court has assumed jurisdiction over any property.  It is

5    true that jurisdiction was first obtained in state court.  However, there has been no showing that

6    this federal forum is inconvenient for the parties or that the state court can adequately protect the

7    litigants' rights.  Under rare circumstances "the presence of state-law issues may weigh in favor

8    of surrender." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 980 (9th Cir. 2011) (internal

9    quotation marks and citations omitted).  But where, as here, the law involves routine state law

10   issues, including California wage and hour claims, this factor does not weigh in favor of granting

11   a stay. *Cf. Chacon v. Express Fashion Operations LLC*, No. 19-cv-00564-JLS-DFM, 2020 WL

12   4004230, at *5 (C.D. Cal. Apr. 15, 2020) (finding that the various claims including overtime

13   wages and rest period violations involved routine issues of state law).  Moreover, "the source-of-

14   law factor has less significance where the federal courts' jurisdiction . . . . is concurrent with that

15   of the state courts." *Myers v. Gilead Scis., Inc*, No. 24-cv-02668-AMO, 2025 WL 257604, at *4

16   (N.D. Cal. Jan. 21, 2025) (internal quotation marks and citations omitted).  As noted above,

17   because not all the issues in the two actions are the same, there exists a legitimate concern as to

18   whether the state court proceedings are adequate to protect the rights of the litigants in this action.

19   Finally, "[t]here is a strong presumption that the presence of an additional claim in the federal suit

20   means that *Colorado River* is inapplicable." *State Water*, 988 F.3d at 1206.

21       Therefore, the court concludes that the application of *Colorado River* is inappropriate in

22   this case and defendant's motion to dismiss the PAGA claim will be denied.

23                                    **CONCLUSION**

24   For the reasons stated above,

25   1.    Defendant's motion to dismiss (Doc. No. 12) is DENIED;

26   2.    Plaintiff's motion to remand (Doc. No. 17) is DENIED;

27   3.    Defendant Bellingham is instructed to file an answer within twenty-one days of

28         this order; and

27

1    4.    The court hereby RESETS the Initial Scheduling Conference in this matter for

2    December 9, 2025 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom.

3        a.    The parties are directed to file their joint status report regarding scheduling

4            no later than November 25, 2025.  The parties shall refer to Judge Drozd's

5            standing order (Doc. No. 10) for Zoom appearance information.

6    IT IS SO ORDERED.

7    Dated:    **September 22, 2025**

8                        DALE A. DROZD
                        UNITED STATES DISTRICT JUDGE